Go ahead and open court, if you will. All right. Good morning, everyone. We have a full calendar this morning. So I think we'll dispense with a reading of the calendar and you may call the first case. All right. Very well, counsel. You may proceed. You're muted, Mr. Domino. Thank you very much. I apologize. I'm Dave Domino. I'm here on behalf of KD and her parents. She presents the kind of case that seems easy at first blush from your point of view, but we think is an extremely difficult case asking you to take a careful look at the willful blindness trend in the law incorporated in your jurisprudence that deals with Title IX cases, reverse this case and remand it for trial. We also think we have an interesting Seventh Amendment issue to discuss with you today. This student, of course, was a junior high student assaulted in the classroom at school repeated times by a teacher. There were many suspected sexual behavior and actual improper behavior by the teacher against the student. All of those were made to the appropriate reporting school principal acknowledges receiving the reports. He acknowledges that he made no file, no notes, no record of any of the reports and his superior at the central administration office admits that the school district never undertook an investigation. The principal says that he talked with the teacher from time to time to encourage him to be careful and admits that he told some female students to stay away from the teacher. Those circumstances are in sharp contrast with what you've seen before in these kinds of cases. This is a situation where there was actual knowledge, not of sexual contact, but of improper contact. Proper improper contact in violation of school principals and improper contact of the kind that triggered Nebraska's mandatory reporting statute, which all school employees, regardless of their position. There was compliance with that statute finally by a teacher subordinate of the principal after repeated reports to him. We think the case presents issues of fact for the jury. It was decided on a motion for summary judgment. We think the evidence we have clearly presents issues about whether there was deliberate difference. There was certainly willful plaintiff that were make an intention to what they might mean. And I cast that in this context in Nebraska. The mandatory reporting statute has a criminal penalty. It's class three misdemeanor, but it's a criminal penalty. If these facts were presented to a Nebraska jury, and this principal was charged with a violation of that mandatory reporting statute, I think the prosecutors would be confident of their outcome. We think there's deliberate indifference, and we think that this is the case in which you use the willful blindness element in the decision that you made. There were known acts here that constitute acts of discrimination. The appellees suggest in their briefs that what is required is that the school district know that there was actual sexual contact going on between the student and the teacher. Vigorously disagree. We believe that what was required was that the school district have notice of occurrences that raised enough of a suspicion and concern to require that action be taken to investigate. That never happened. The student was never interviewed. The parents were never interviewed. The teachers who reported to the principal were never interviewed. The school resource officer was never contacted, though he worked in the building, not by the principal. The teacher lied to the principal and was caught lying to him about whether he had been approved to mentor the student in a school-related but not sponsored mentoring program. That mentoring program, though not sponsored by the school, occurred at the school with an activity authorized and approved to occur at the school. The mentoring was always same-gender mentor to student, with the exception of this case. It was always in the school principal's office area in a designated location, except in this case. This is a case that is egregious enough to require sufficient quick break. This is a case in which the reports were made to the appropriate person, as I said before. The principal not only was a mandatory reporter, but under his job description and the policies of the school district, he had the responsibility to inquire, to initiate an investigation. He had the authority to separate the student from the principal, which he never did. And he certainly had the authority and responsibility to acquire and build a file. Mr. Domina, I think what I'm hearing from you is an agreement or a concession that there was no actual notice, but something short of that. What's the best case that you have that we could go to to warrant the conclusion that you're asking us to reach with respect to the Title IX and the 1983 claims? You mean the best decision of a court, Your Honor? Yes. I wanted to be sure that I wasn't misunderstanding and to be sure you weren't asking for physical facts as the case. No, I'm not asking for, you know, we have a lot of cases that say actual notice is required. I'm asking for your best case that backs up the path that you would like us to take here. Let me identify two, if I may. The first is Baynard versus Lawson. It's from Virginia, affirmed by the Fourth Circuit at 268 Fed Third 228. That was a case in which a student was sexually abused and the case was submitted because the principal waited to pass a report of misconduct on to superiors of the principal. And the reported conduct wasn't of sexual contact. It was of lap sitting and similar episodes, which are things like we have in this case. The other case I would identify for you is Doe One versus the Chicago Board of Education. This is a Fed Sup case, and I choose it, even though it's a district court case, because there are several Seventh Circuit cases cited in it that I think the facts aren't as good in the other cases as this one, but it'll get you to the authorities. The citation is 364 Fed Sup Third, 364 Fed Sup Third, 849, a 2019 case. Your Honor, in this case, the third element that we have to establish is that the injury was so severe that the student was deprived of educational opportunity. And in this case, the student actually had an obstetric surgical procedure to repair the consequences of sexual assault by the perpetrator. She had extensive counseling, which continued to the time of trial on the issue of damages before the trial court, not against the school district, but against Robeson. And the evidence there was that it will continue on a lifelong basis. Her educational activity was interrupted. There is good evidence in the record that she continued with good academic performance, but she withdrew from friendships. She withdrew from school activities, and she simply didn't participate in the full educational experience because of what happened. So as to the school district, we ask that you reverse and remand for a trial under Title IX. As to the principal, Mr. Robeson, we think that we're entitled to proceed under Section 1983, and we're aware of your decisions that say that the elements under 1983 against the individual are essentially the same as those under Title IX in a case like this. Given that precedent, I won't argue to the contrary and won't repeat the things that I've said about the principal. With two exceptions. One thing I have not mentioned about the facts thus far is that the principal himself caught the teacher and the student in the homeroom at noon alone with the lights dark twice. He also received an email message from the teacher, which had attached to it photographs showing cheek-to-cheek contact and cheekiness, if I may use that word, inappropriate tucking and hugging, and admits that he did not open that email to see those photographs. The other thing I want to repeat that I have said before, because I think it bears a brief repetition, is to be sure the court is aware that a Mr. Wakefield, the superior of the principal, Mr. Pardels, pointedly admitted that the school district made no investigation and that the only investigation in this case was by the Omaha Police Department after this trial. The teacher had been arrested. Now, I want to talk for a few minutes about our Seventh Amendment claim. I recognize that this is principally an academic issue in the context of this case because the issue is presented against an incarcerated teacher who is likely judgment-proof. But I think it's an important issue and I urge the court to consider it. It looks to me, from reading the precedent cited in our brief, like Seventh Amendment jurisprudence in cases following default judgments took a wrong turn something after, sometimes shortly after, the very first case that the United States Supreme Court decided on this subject back in 1825, I believe, a case from Rhode Island, where the court, because of a Rhode Island statute, said there was no jury trial right to find default damages against a defaulted defendant. I tried to carefully identify and examine the other authorities on that subject, which frankly aren't very authoritative because they don't explore the subject very deeply. There's a lot of repetition of the same four lines, and of course it's not a frequently occurring issue, but we think it's a really important one. It's cathartic value to a victim like this. It is the essence of what trial by jury is about. It allows the community to participate in these decisions and to express itself. It's not about recovering a collectible judgment. It's about using the judicial system to its full measure with citizen participation. We urge that you find that we were entitled and are entitled to a jury against Robeson and reverse and remand on that basis as well. I'll reserve the rest of my time. Thank you very much. All right. Thank you, counsel. Ms. Ackerman? Yes, Your Honor. I'm not seeing the clock, so I want to make sure I have a clock here. May it please the Court. I represent the Omaha Public Schools, and there are two claims against the Omaha Public Schools. The Title IX claim and the claim under the Brassica Political Subdivision. TMACC is representing the principal, Daniel Bartles, in his individual capacity with regard to the 1983 claim, the Political Subdivision Tort Claims Act, and aiding and abetting claim. We ask this Court to please affirm the District Court's ruling based on the Court's careful consideration of the undisputed material facts in this case and the correct application of the laws set forth in Debster, Davis v. Monroe, and the progeny of this Court, which has consistently found that actual notice is required. I'd first like to address the case that was cited by Mr. Donlon as his best case to ask this Court to please deviate from an actual notice standard, and that was the Baird v. Lawson case. In that case, one of the students told the principal that he was being sexually molested by that teacher, but he did not want to press charges. That principal did not report that nor take any further action. That decision goes on and talks about other things at the school that would have not been knowledge under Debster v. Davis of actual knowledge. So that case is clearly distinguishable. It is required that they prove that there was actual notice of sexual harassment or sexual abuse under Debster, and if the legally relevant person, and that has to be a principal or someone higher, has notice of that information, they will not be held liable for individual damages if they can show that their response was not clearly unreasonable under the known circumstances. This is not a case in hindsight. This is a case in what was known at that time. Now, because they cannot prove actual notice on the material undisputed facts, they have taken license with what they say the facts are in this case. Because this is a fairly complex record, I'd like to draw the Court's attention to two parts of the record, if there's any question about what's undisputed or not. JA 2300-2370 is the plaintiff's response to the defendant's statement of undisputed facts, as required by the trial court. You identify the undisputed facts, they have to respond to put something in dispute. Secondly, we then had to respond to their responses, and those are set forth at JA 2425-2523. The judge carefully went through those material undisputed facts. As they've identified, there's 14 issues of reports of Robeson. Seven of those only deal with L.D., who is the plaintiff in this case. If you look at the case law here, the most recent case on this was Casey v. Smayo. In that one, they've held numerous times, though they've consistently said that the fact that there were very familiar letters, numerous text messages, the teacher ignoring an order not to contact the student, then trying to get the student to leave a sleepover to stay at her house, was not sufficient notice. There was actual notice of potential sexual abuse in that one. The Court said that the school officials know that there were inappropriate contacts. At the most inappropriate, it didn't appear to indicate that there was a sexual relationship. Similarly, in Doe v. Flaherty, this Court reported that it was not reasonable to infer that there was sexual abuse or sexual activity going on. There was a vague inquiry about something going on between the two. There was an allegation that the girl had been seen going down to the coach's office, into the gym. There was an allegation that she was seen sitting on the desk in her cheerleader's office. We don't have anything similar to that. In that case, they did not find it was reasonable to infer that there was sexual activity going on. In that one, the superintendent's secretary was suspicious enough that she contacted the principal, she contacted the parents, and she went to the board meeting and pulled the principal out of the board meeting to say, there's something going on. In that one, the principal had checked, the student had only been gone from class twice, and she had, the Census Security guard hadn't seen her down there. There's similar facts in this one. Mr. Domina mentions the email that was sent in April that said that he was going to try to mentor her the next year for an hour. It is undisputed that the principal did not see that, and they've undisputed that, until after Robeson was arrested. He also contends that there was no investigation. What he wants to do is disregard what actually was done. Each time there was a report, it's undisputed, and they've undisputed that, if you look through those facts, he talked to Robeson. He corrected behavior. When there was an anonymous note left in the principal's office saying, isn't it unusual that these two are gone on the same day? What does he do? They try to figure out with the assistant principal who wrote the note. Then he calls the father and asks the father, where's L.B.? He says, she's at home. Then when there was a report that there was only three times, twice, that they were actually seen in the classroom mentoring after they were told not to. One was in November when the principal walked in. There's never any allegations. Anything inappropriate was going on in that classroom. They were sitting there eating with praise. So what does he do? He says, hey, you need to be back down in the administrative center. There was a report later that spring saying, hey, I saw them in the classroom. The door was shut. The lights were off, but they were sitting there eating with their praise. What does he do? He immediately sends a security guard down there. There was no one there. And he does talk and follow up with Robeson after that. The final thing that ended up with the report of Robeson was after the last day of school, when a teacher saw Robeson giving extended hugs to students outside of the school. That was enough that she felt should be referred to Child Protective Services, which was done, which triggered Robeson. They triggered HR taking action, contacting OPD, following up with a statement from the teacher, following up with reviewing the video. At the end of the year, when Mr. Dominant was talking about there was no investigation done, this was after Robeson was arrested. OPS went through, identified other potential victims, worked with OPD to do an investigation at that time. The law does not say there has to be an investigation. The law says that any response must be reasonable under the known circumstances. I would like to address briefly, he's asking the court, and I do not know what my time is. I'm sorry, I do not see the clock. I do want to briefly ask. You have about seven minutes. Oh, okay. Seven minutes is left for this side of the argument. Okay, thank you very much. There is no precedent for this court to adopt the lesser standard. One of the key cases that Dominant relies on is the Global Tech case. That case is very instructive because the Supreme Court in that case, he asked to look at two. He asked you to look at the Fletcher case, which is the, excuse me, a U.S. versus Fletcher, which is an online child porn case, where the issue is whether there was an intent to distribute once the defendant had obtained file shares of child porn, said he was aware of it. The second one is the civil patent case, Global Tech. Her report to court was constrained levels of intent required for whether the defendant was inducing infringement of a patent. In that case, there were two express statutes that said, we're going to have, if you can meet this, you're going to be liable, or criminally or civilly liable in that. In this instance, remember that we have a Title VII implied action that the Supreme Court was very careful to say, because we're implying this and this wasn't granted by Congress, we're going to make this very narrow and we're going to require it to be actual knowledge. But in Global, the court recognized that their test was something less than actual knowledge. The Supreme Court stated that the test for willful blindness requires more than mere recklessness or negligence and described willful blindness as one who takes deliberate actions to avoid confirming a high probability of wrongdoing, who can almost be said to have actually known the critical facts. They also, which is in Strapi, so they're admitting that is an actual notice. And besides that, there's no way, they do not have any evidence in this that the principal or OPS took steps to deliberately avoid finding out the actual facts. They also, in that court, identify recklessness, which is also less than actual knowledge, as one who merely knows of a substantial and unjustified risk of such wrongdoing. And that's really the subjective recklessness test that Dominus also asked you to adopt to avoid having to establish actual knowledge. And in Global, they also identify negligence then as one who should have known of a similar risk, but in fact did not, and that's why they're trying to ask you to adopt a Title VII construct. It's kind of a weird, they're trying to ask you to identify a Title VII construct that's been used in retaliation cases, saying because our evidence is circumstantial that you knew that the abuse was occurring, then that should shift the burden to the defendant to prove that abuse was not occurring. That has never been utilized in any Title IX case, and in any event, that doesn't actually represent Title VII law, which requires that the burden still remain with the plaintiff to establish that. So what they've done is they've admitted they can't meet the Dempster test here, either factually or legally. And he did not address the Nebraska political, well, one thing I want to mention is policies. Mr. Ackerman, let me stop you there. Please stop the clock, if you will. Are you now, Mr. Mock, do you have some of this time, or I want to make sure that you're guarding the clock here, because the clock reads three minutes and 39 seconds, and I didn't know how you decided to divide your time. My understanding was that I have six minutes, and Ms. Ackerman has 14. Judge Shepard, this is Jeanette in the courtroom. We've set two different times, so this is just her time. We have his separate time. Good. Well, that's good. I just wanted to make sure that everyone was given an opportunity to say their piece this morning. Didn't want anybody to be deprived. Thank you, Your Honor. Go ahead. Sorry for the interruption. Oh, no, thank you. Thank you very much for helping me on the time on that. There are a couple other points I'd like to discuss on the facts. They make an issue that they sustain that there was a duty to report child abuse in this case. The Nebraska statute provides that any person who has reasonable cause to believe that a child has been subjected to child abuse or neglect or observed them being subjected to conditions or circumstances that reasonably would result in child abuse or neglect, then that triggers a reporting action. And this simply was not anything that rose to that level. At the end, when the teacher saw the extended hug, which you do have that video of those extended hugs out of the school, at that point, she felt that there was an issue. The school policies require the person that observes the questionable conduct to go ahead and be the reporter, which occurred at that time. And I will mention, LD was not one of the individuals who was hugged at that. There was also a mother hug, I believe, on that day. Also, the OPS policies were followed. There is no OPS policy against hugging a student. There's no OPS policy about being alone in a room with a student or for mentoring a student, informally or not. There's no requirement to write down or document every time that a teacher is corrected or asked to do something different. The report to OPS, or excuse me, to CPS, the HR investigation, and the sanction against Robeson were set forth in the employee consultation report, which you have evidence of, which went down and identified the things that he was not supposed to do. The hugging, the fact he'd approached the teacher that reported him. And that, Mr. Dominick mentioned in the brief, when Mr. Bartles told Robeson to be on the down low, that was after he talked to the teacher, after direct instructions not to, with reporting to CPS, more or less saying, stand down, don't reach out. We would ask the court, with regard to the Nebraska Political Subdivision Tort Claims Act, to directing them to the court of Edwards v. Douglas County, which the Supreme Court, for the second time, said that any type of action that's related to an assault is barred by the intentional tort provision of the Political Subdivision Tort Claims Act. So this type of action is not allowable under that. And it overrules the Doe v. OPS case that is relied on by the plaintiffs in this case. So in closing, we ask that the court please affirm the district court's decision, which was well reasoned. It was based on the material undisputed facts. It was based on the Supreme Court law and the law of this jurisdiction. Thank you. Thank you very much. All right, Mr. Mock. Thank you, Your Honor. Good morning. The decision of the district court should be affirmed in all respects for a number of reasons. First of all, the district court correctly found that the complaint against Principal Bartles was in his official capacity and not his individual capacity because the appellants did not expressly and unambiguously state that the action was against Principal Bartles in his individual capacity. The appellants have not assigned that as error, nor have they argued it in their briefs. But even if that was not the case, the district court correctly found under Cox v. Sugg and Doe v. Flaherty, a case law that has been in effect now for almost 14 years, that no supervising official in a case in which the Title IX claim could arise can be sued directly or indirectly in Title IX or 1983. Thirdly, if the action is against Bartles in his official capacity as it relates to 1983, then that's really a suit against OPS, which would require the allegation and proof of Monell-type liability. But over and above that, what we really have here is a record that is absolutely devoid of any facts that show that Principal Bartles had actual knowledge, in other words, awareness in fact of sexual harassment or sexual abuse or possession of facts that point plainly to the conclusion that Robeson and L.D. were engaging in sexual conduct without further investigation. And there's not a single reported incident in the record of any sexual contact between Robeson and L.D. or any other student at the Davis Middle School, for that matter, that was told to Bartles or that he was aware of. In fact, no one, including the staff members, L.D.'s friends, and even her parents were aware of the sexual relationship between Robeson and L.D. At most, the complaints described show some inappropriate professional behavior that required counseling and additional employment structure for Robeson, but none of them pointed plainly to the conclusion that Robeson was sexually abusing L.D. And while Bartles, as the principal, might have done some things differently in retrospect, he acted on information he possessed and related to Robeson and L.D. in a timely manner consistent with the exercise of professional discretion and judgment. His response to the reports of Robeson's conduct, and that's conduct that was neither sexually charged nor meeting the definition of sexual harassment, was based on a professional assessment of each situation in light of statutory and school district progressive discipline policies. This court has adhered very carefully for over 22 years since Gebser and Davis were decided, and the United States Supreme Court in Gebser expressly found that actual notice was the standard, not high probability or something less than actual notice, but actual knowledge of sexual abuse or harassment. If you look at the Gebser opinion, all of that standard flows from the analysis that the court did in rejecting Title VII procedural and evidentiary concepts in light of the nature of the creation of the implied cause of action. So I second everything that Ms. Ackerman has said about the lack of notice, and I want to talk briefly about the state claim related to the allegation that Principal Bartles aided and abetted the conduct of Robeson. Since 1976, the Nebraska Supreme Court has said that aiding and abetting involves more than participation in the criminal act. It involves some conscious sharing of the criminal act, as in something that the participant wanted to bring about in furtherance of a common design. And in this case, not only do we have no evidence of a lack of common design or a desire on the part of Principal Bartles to bring about any particular result, we don't even have any evidence that he actually knew what was going on between L.D. and Robeson. So I would ask, as Ms. Ackerman did, that you affirm the judgment of the district court in all respects. Thank you. Thank you, counsel. Mr. Delmona. Thank you, Your Honor. Let me start where Mr. Mock left off. The aiding and abetting decisions of the Nebraska Supreme Court in the tort area, in the civil law, are satisfied by mere encouragement of the wrongdoer. In this case, what Mr. Bartles did was to tell other female students to stay away from the teacher instead of reporting or investigating the teacher or separating the child with whom Mr. Mock concedes Bartles knew there was a relationship, but he didn't know what the details were, according to counsel. He didn't separate them or do anything at all to protect that child. Counsel for the school district says that on one occasion, the father... Excuse me. Do you have any case that stands for the proposition that one may unwittingly aid and abet an act that they don't know is actually taking place in the civil context? No, I do not. What I do have in this case, Your Honor, that I think differs from your question is that I have a principal who is actively allowing the behavior complained of to him to go on without an investigation. All he had to do was to separate the student in her first year when she was a student of this teacher from the teacher. And there were other sections of the class where that could have been done. He didn't do that. He could have interviewed those teachers, not just had them come to him and say there's a problem, which is all he did. He didn't say, what's the problem? What did you see? He didn't keep notes so he could compare the kinds of counsel. Isn't that negligence? You're describing rather than encouragement. The second part of what I said, Your Honor, I think is negligence. I think it was negligent of him to the level of indifference to fail to maintain some notes or records of what he was doing. Contrary to the school district's counsel's representation, there is an OPS policy that required that he investigate and keep a report, a record of what he found in the investigation. And that policy is at page 842 in volume four of the record. That same policy prohibits even subtle sexual pressures or activities. In this case, what we know was that there was an inappropriate relationship and we know Bartles knew it. What we don't know is whether Bartles had reason to suspect that that relationship was so intensive as to involve sexual contact. We do know that it involved singling out this young girl and engaging in grooming activities that were reported to the principal. And that grooming activities for a minor child beneath the age of consent are, in fact, acts of harassment. She's not 35 years old and doesn't have to be seen being groped to be victimized.  So I very strongly believe, Your Honor, that the failure to write these things down is negligent, but it's above that. It's willful disregard. It's willful blindness not to investigate and write it down. And it's deliberate indifference not to inquire of the person who came to the principal and said, Wait a minute. What happened? When? Where? Who was present? Who else could I talk to? Did anybody else see this? Do you agree with the assertion that willful blindness and that deliberate indifference are standards that are higher than mere recklessness? I do, Your Honor. The Supreme Court said that, that they're between intentional misconduct and recklessness. I do think that it's higher. Okay. And what was going on here that was worse than reckless conduct specifically and why? Are you asking by the principal or by the teacher? Well, I'm not concerned about the teacher. I think, you know, the teacher's obvious misconduct is apparent, right? Well, the Seventh Circuit has some cases that say failure to separate the student when their suspicion is willful misconduct is above recklessness. I think that's above recklessness here. I really think failure to investigate, if not the first time there was a report, then the second, the third, the fourth, the fifth, not to inquire of those teachers was above recklessness. I think when the principal found the student and the teacher in the room, and we have no evidence that at that time, catching them red-handed, he said, we have no evidence that he said, what's going on here? We have no evidence that he directed the student to leave. We have no evidence that he separated them even then. And that conduct recurred and he caught it again. I think that's above recklessness. It might not be if this were a college student above the age of consent, but this is an impressionable child. And I think that for that person, it is your honor. I want to close with one comment about how much the outcome here hurts. And I'm going to go back to the Seventh Amendment. Your honors, if the district court's decision on the right to trial by jury stands, then a convicted rapist can deny a citizen of the United States the right to trial by jury by not showing up in court. I ask you to reverse and remand and give this little girl a trial. Thank you. Very well. Thank you, counsel. Case has been well argued and it is submitted and a decision will be issued in due course.